[No. 48578-4-I.   Division One.   April 1, 2002.]

THE CITY OF SEATTLE, *Appellant*, v. OSCAR McCOY, ET AL., *Defendants*, WILMER P. MORGAN, ET AL., *Respondents*.

---

[13] See RCW 42.17.320, which gives an agency five business days to appropriately respond to requests for public records.

*Thomas A. Carr, City Attorney*, and *Garth D. Wojtano-wicz, Assistant*, for appellant.

*David R. Osgood* and *James L. Varnell*, for respondents.

AGID, C.J. — The City of Seattle appeals from an order granting attorney fees and costs to Wilmer Morgan and Gwen Dixon.[1] The trial court granted respondents' motion for attorney fees and costs under Washington's eminent domain statute, RCW 8.25.075, following this court's decision in *City of Seattle v. McCoy* (*McCoy* I).[2] *McCoy* I involved a drug nuisance abatement action the City filed against Oscar and Barbara McCoy, Morgan and Dixon, and real property owned by Morgan and Dixon. This court held that application of the drug nuisance statute to the McCoys "constitute[d] a taking of property without compensation and without due process of law."[3] We agree with the City's contention that the attorney fees provision of the eminent domain statute does not apply to drug abatement actions. Therefore, we reverse the trial court's fee award.

## FACTS

In November 1997, the City filed a complaint against Oscar and Barbara McCoy, Morgan and Dixon, and real property owned by Morgan and Dixon, under Washington's drug nuisance abatement statute, chapter 7.43 RCW. The complaint alleged that illegal drug activity occurring at Oscar's II, a restaurant and lounge owned and operated by the McCoys, made the property a drug nuisance. The McCoys leased the space for Oscar's from Morgan and Dixon. Among other things, the complaint asked the court to enter a final order of abatement "[p]roviding for the immediate closure of the Subject Property and prohibiting

---

[1] The City has settled its dispute with Oscar and Barbara McCoy about the order awarding the McCoys attorney fees and costs. We granted the City's motion for partial dismissal. Therefore, this opinion addresses only the City's appeal from the order granting attorney fees and costs to Morgan and Dixon.

[2] 101 Wn. App. 815, 4 P.3d 159 (2000).

[3] *Id.* at 819.

use for any purpose for a period of one (1) year or until further order of the Court; and . . . [s]tating that the Subject Property shall remain in the custody and control of the court while the order of abatement is in effect."

After contested hearings, the trial court found that Oscar's was "a drug nuisance pursuant to Chapter 7.43 RCW," and ordered that it be abated and closed to further operation "by and through the Defendants' [sic] McCoy" for one year. The effect of the abatement order was to place the property in the custody of the court.[4] However, the abatement order was never enforced because the McCoys obtained a stay of the order pending their appeal.

On appeal, we held that the abatement order was an unconstitutional taking under the Fifth Amendment.[5] The court stated:

> [C]hapter 7.43 RCW as applied to the McCoys violates the Fifth and Fourteenth Amendments to the United States Constitution. The application of the statute on these facts constitutes a taking of property without compensation and without due process of law. State nuisance and property common law is not an exception to a taking under these facts.[6]

The court did not award the McCoys attorney fees and costs, stating that although amicus for Northwest Legal Foundation urged such an award, "[t]he McCoys ha[d] not cited the takings fee statute or otherwise requested attorney fees as required under RAP 18.1."[7]

After the appeal, Morgan and Dixon filed a motion for attorney fees under RCW 8.25.075(1). That provision authorizes the superior court to award a "condemnee" reason-

---

[4] *See* RCW 7.43.090(3) (requiring that a final abatement order "[s]tate that while the order of abatement remains in effect the building or unit within a building shall remain in the custody of the court").

[5] Morgan and Dixon did not appeal from the trial court's entry of the final order of abatement.

[6] *McCoy*, 101 Wn. App. at 819. The court also held that "Chapter 7.43 RCW as applied to the McCoys, violates due process under the Fourteenth Amendment to the Constitution." *Id*. at 843.

[7] *Id*. at 844 (emphasis omitted).

able attorney fees and costs in "a proceeding instituted by a condemnor to acquire real property" if there is a "final adjudication that the condemnor cannot acquire the real property by condemnation" or if the "proceeding is abandoned by the condemnor."[8] The trial court granted their motion, awarding Morgan and Dixon $7,820.51. The City now appeals the order.

## DISCUSSION

██ The issue is whether the attorney fee provision set forth in RCW 8.25.075(1) applies in the context of drug nuisance abatement proceedings brought under chapter 7.43 RCW. The proper construction of the statute is a question of law that we review de novo.[9]

██ Under Washington law, "a court has no power to award attorney fees as a cost of litigation in the absence of contract, statute, or recognized ground of equity providing for fee recovery."[10] The trial court awarded Morgan and Dixon attorney fees and costs under the attorney fee provision contained in Washington's eminent domain statute. The provision, entitled "Costs—Award to condemnee or plaintiff—Conditions," provides:

> (1) A superior court having jurisdiction of a proceeding instituted by a condemnor to acquire real property shall award the condemnee costs including reasonable attorney fees and reasonable expert witness fees if:
>
> (a) There is a final adjudication that the condemnor cannot acquire the real property by condemnation; or
>
> (b) The proceeding is abandoned by the condemnor.[11]

We apply general principles of statutory construction in determining the meaning of this provision. If the language

---

[8] RCW 8.25.075(1)(a), (b).

[9] *Seattle Filmworks, Inc. v. Dep't of Revenue*, 106 Wn. App. 448, 453, 24 P.3d 460, *review denied*, 145 Wn.2d 1009 (2001).

[10] *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994).

[11] RCW 8.25.075(1).

of a statute is plain and unambiguous, we derive its meaning from the statutory language itself.[12] However, if the language of the statute is susceptible to more than one reasonable interpretation, an ambiguity exists and we attempt to give effect to the intent and purpose of the Legislature.[13] To discern the Legislature's intent, we may look to the legislative history of the statute as well as to other statutes dealing with the same subject matter.[14]

We must first decide whether this is a "proceeding instituted by a condemnor to acquire real property."[15] The City argues that the plain language of the provision restricts its application to "proceedings instituted in a formal exercise of the eminent domain power pursuant to RCW 8.12 *et seq.*" Morgan and Dixon counter that the proceeding instituted by the City "was in effect a condemnation proceeding" because the City was seeking to close the property, to prohibit its use for any purpose for one year, and to give custody and control of the property to the court. We agree with the City.

We hold that drug nuisance abatement proceedings are not proceedings "to acquire real property" within the meaning of RCW 8.25.075(1). Even assuming the City was acting as a "condemnor" in these proceedings, RCW 8.25.075(1) does not apply here because, in initiating the abatement action, the City was not attempting to acquire Morgan and Dixon's property.[16] "Acquisition" is defined as the "gaining of possession or control over something."[17] Unlike eminent domain proceedings, the entry of a final order of abatement under RCW 7.43.090 does not give the party initiating the proceedings the right to use the subject

---

[12] *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998).

[13] *See id.*

[14] *See id.*

[15] RCW 8.25.075(1).

[16] *Id.*

[17] Black's Law Dictionary 24 (7th ed. 1999).

property.[18] Rather, the court retains custody and control over the property while the abatement order remains in effect.[19] Because a final order of abatement never transfers custody and control over the property to the complaining party, we conclude that drug nuisance abatement actions are not "proceeding[s] instituted by a condemnor to acquire real property."[20]

In addition, awarding attorney fees and costs in the context of drug nuisance abatement proceedings would not further the Legislature's purpose in enacting RCW 8.25.075(1). The provision was intended to bring Washington law into conformity with the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970.[21] The federal act "has been strictly construed as creating only a narrow exception to the general rule of nonrecovery of litigation expenses."[22] The codified statement of purpose, enacted with RCW 8.25.075, provides as follows:

(1) The purposes of this chapter are:

(a) To establish a uniform policy for the fair and equitable treatment of persons displaced as a direct result of public works programs of the state and local governments in order that such persons shall not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole and to minimize the hardship of displacement on such persons;

(b) To encourage and expedite the acquisition of real property for public works programs by agreements with owners, to reduce litigation and relieve congestion in the courts, to assure consistent treatment for owners affected by state and local

---

[18] *See* RCW 7.43.090.

[19] RCW 7.43.090(3).

[20] RCW 8.25.075(1).

[21] *Daviscourt v. Peistrup*, 40 Wn. App. 433, 442, 698 P.2d 1093, *review denied*, 104 Wn.2d 1008 (1985).

[22] *Id.* at 444.

programs, and to promote public confidence in state and local land acquisition practices.[23]

As this court has previously recognized, "[t]he purposes of the act, as stated in the act itself, are to expedite the acquisition of real property for public works programs and provide equitable treatment for persons displaced as a result of public works programs."[24] Drug nuisance abatement proceedings do not involve the acquisition of property for use in public works programs. Therefore, allowing attorney fees in cases like this one would not further the Legislative purpose behind RCW 8.25.075(1).

Finally, we reject Morgan and Dixon's argument that the fee award should be upheld under a theory of inverse condemnation. Morgan and Dixon never made a claim of inverse condemnation at the trial court level. And, their contention that the trial court based its decision on *Brazil v. Auburn*,[25] an inverse condemnation case, is not supported by the record. In any case, *Brazil* involved RCW 8.25.075(3), which provides for a fee award in cases where a superior court renders a judgment for the plaintiff awarding compensation for the taking of real property for public use.[26] This provision does not apply because Morgan and Dixon have not prevailed as plaintiffs in an inverse condemnation action.

We therefore reverse the trial court's fee award to Morgan and Dixon.

GROSSE and BAKER, JJ., concur.

---

[23] RCW 8.26.010.

[24] *Nelson v. Samuel*, 43 Wn. App. 114, 119-20, 715 P.2d 161 (1986).

[25] 93 Wn.2d 484, 610 P.2d 909 (1980).

[26] *See id.* at 497.